KC **FILED**
OCT 18 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| United States Securities and Exchange Commission, | |
| Plaintiff, | CIVIL ACTION<br>CASE NO. |
| v. | |
| Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial Services, Inc., | 06CV5645<br>JUDGE DARRAH<br>MAGISTRATE JUDGE COLE |
| Defendants. | |

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("Commission") alleges and states as follows:

### INTRODUCTION

1. From at least July 2002 through June 2004, Gari Aldridge, Tracey Aldridge, James Casmay, and Demondo Thomas raised approximately $1.7 million from 16 investors by selling these investors notes, which they purported to be alternative certificates of deposit ("alternative CDs") issued by Century Financial Services, Inc. ("Century Financial"). The Aldridges, and Casmay and Thomas, who acted as unregistered broker-dealers, solicited investors to purchase the Century Financial securities by representing to them, among other things, that the alternative CDs paid a guaranteed 6% annual return and that they were insured by the Federal Deposit Insurance Corporation ("FDIC").

2.  In reality, the Century Financial investors did not receive guaranteed returns and the alternative CDs were not FDIC insured. Rather, the Aldridges misappropriated investor money for their personal use, used new investor money to make payments to prior investors, inappropriately used a portion of the investors' money to attempt to operate their high-risk mortgage business, and used investors' money to pay undisclosed commissions to Casmay and Thomas.

3.  As a result of this conduct, Defendants Gari Aldridge, Tracey Aldridge, and Century Financial directly and indirectly, engaged and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which constitute and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act")[15U.S.C. §77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. 240.10b-5].

4.  Defendant James Casmay, directly and indirectly, engaged and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which constitute and will constitute violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], and Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §78j(b) and o(a)(1)] and Rule 10b-5 promulgated thereunder [17 C.F.R. 240.10b-5].

5.  The Commission brings this action to enjoin such transactions, acts, practices and course of business pursuant to Section 20(b) of the Securities Act [15 U.S.C. §77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)].

## DEFENDANTS

6. Century Financial Services is a Florida Corporation with its principal place of business in Pembroke Pines, Florida. The Aldridges formed Century Financial in 2002. Century Financial issued the alternative CDs sold by the Aldridges and Casmay. Century Financial is not a regulated bank, nor does another regulatory agency, besides the Commission, regulate its activities.

7. Gari Aldridge, age 46, resides in Moreno Valley, California. He is the brother of Tracey Aldridge, and a co-founder and the President of Century Financial.

8. Tracey Aldridge, age 45, resides in Pembroke Pines, Florida. He is a co-founder and the Secretary of Century Financial.

9. James Casmay, age 36, resides in Chicago, Illinois. Casmay acted as an unregistered broker-dealer by selling alternative CDs issued by Century Financial to investors for transaction based compensation. He is not registered with the Commission in any capacity and he does not hold any securities licenses.

## RELEVANT PERSON

10. Demondo Thomas resided in Chicago, Illinois. Thomas also acted as an unregistered broker-dealer by selling alternative CDs issued by Century Financial to investors for transaction based compensation. He was not registered with the Commission in any capacity and he did not hold any securities licenses. Thomas died on September 2, 2006.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to Sections 20(c) and 22(a) of the Securities Act [15 U.S.C. §77t(b) and §77v(a)] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §78u(e) and §78aa].

12. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)] and Section 27 of the Exchange Act [15 U.S.C. §78aa]. Certain of the sales, transactions, acts, practices, and courses of business alleged herein occurred in the Northern District of Illinois, and Defendants can be found in, transact business in, and/or are inhabitants of the Northern District of Illinois.

13. Defendants have made use of the mails and of the means and instrumentalities of interstate commerce in connection with the transactions, acts, practices, and courses of business alleged herein that occurred within the jurisdiction of the United States District Court for the Northern District of Illinois.

## FACTS

### The Offering of the Alternative CDs

14. In July 2002, the Aldridges formed Century Financial for the purpose of offering alternative CDs to investors. At or about the same time, the Aldridges began to operate a mortgage business that focused on subprime lending to high-risk customers, also under the Century Financial name.

15. During the relevant time period, Gari Aldridge was the President of Century Financial.

16. During the relevant time period, Tracey Aldridge was the Secretary of Century Financial.

17. The Aldridges opened bank accounts in the name of Century Financial in order to deposit the investor money that they received from the sale of the alternative CDs.

18. Both Gari and Tracey Aldridge had the authority to write checks and withdraw money from the Century Financial bank accounts.

19. The Aldridges created a two-page offering document for the alternative CDs that made various representations in several sections of the document.

20. The Aldridges entitled the sections of the offering document the "Certificate of Deposit," the "FDIC Coverage on Your Insured Deposits," and the "Truth-in Savings Information" sections.

21. In the section entitled Certificate of Deposit, the Aldridges included a certificate that purported to reflect each investors' individual account number.

22. In the section entitled FDIC Coverage on Your Insured Deposits, the Aldridges represented, among other things, that every alternative CD was insured up to $100,000 by the FDIC.

23. In this FDIC section, the Aldridges also included suggestions regarding how an investor could increase the FDIC insurance coverage if they wanted to invest more than $100,000.

24. In the section entitled Truth-in-Savings Information, the Aldridges represented that the alternative CDs paid interest which was compounded quarterly, resulting in an annual yield greater than or equal to 6%.

25. In this Truth-in-Savings section, the Aldridges represented that the investor's money would be held in a segregated account for the investor's benefit.

26. In July 2002, Gari Aldridge recruited and hired Casmay and Thomas to sell the alternative CDs.

27. The Aldridges provided the offering document to Casmay and Thomas to use to solicit investors for the Century Financial alternative CDs.

28. In late July 2002, the Aldridges and Century Financial, through Casmay and Thomas, started selling Century Financial alternative CDs with a three-year term to the general public.

29. Casmay and Thomas gave the offering document to all of the Century Financial investors. In doing so, they affirmed the representations made in the offering document.

30. Casmay and Thomas met with the Century Financial investors before selling them the alternative CDs to review the offering document with them and to have them fill out and sign the offering document.

31. In addition to the written representations in the offering document, Casmay and Thomas told investors that the 6% annual returns for the alternative CDs were guaranteed. They also told investors that the alternative CDs paid higher returns than conventional bank certificates of deposit.

32. At the Aldridges direction, Casmay and Thomas explained to investors that Century Financial was able to pay the high returns because Century Financial returned more of its profits to customers than conventional banks.

33. At the time that they were selling the alternative CDs, Casmay and Thomas knew that the Aldridges were using at least a portion of the investors' money to

6

operate their high-risk mortgage business. Neither Casmay, Thomas, nor the offering document prepared by the Aldridges disclosed this fact to investors.

34. Neither Casmay, Thomas, nor the offering document prepared by the Aldridges disclosed to investors that Casmay and Thomas received a 15% commission for selling the alternative CDs.

35. Century Financial, the Aldridges and Casmay knew that investors would be motivated to invest in the alternative CDs because they portrayed the investment in their offering document and in oral representations as guaranteed and FDIC insured, and therefore, virtually risk-free.

36. After investors purchased the alternative CDs, both the investors and either Casmay or Thomas signed the offering document.

37. Casmay and Thomas sent all of the executed offering documents to the Aldridges.

38. From July 2002 through June 2004, the Aldridges, through Casmay and Thomas, sold twenty-two separate alternative CDs worth $1.7 million to sixteen investors.

39. The majority of the Century Financial investors were senior citizens and/or individuals who spoke limited English.

40. All of the investors in the alternative CDs were Illinois residents.

### The Fraudulent Use of the Investors' Money

41. In reality, the investors did not receive a guaranteed 6% annual return from the profits of Century Financial.

42. The alternative CDs were not FDIC insured.

7

43. The Aldridges did not place the investors' money into individualized accounts, but immediately pooled the investors' money together in general bank accounts in the name of Century Financial that they controlled.

44. The Aldridges then used the first 15% of all of the investors' funds to pay Casmay's and Thomas' undisclosed commissions based on their sales of the alternative CDs. This materially increased the risk that investors would not receive their promised return by immediately depleting the principal they invested by 15%.

45. Casmay and Thomas made it their practice to deduct their 15% commission payments before wiring the investors' funds to the Aldridges. On occasion, Casmay and Thomas did wire the entire investment to the Aldridges, and then the Aldridges sent them a check for the 15% commission. These checks were signed by Tracey Aldridge and drawn on the Century Financial accounts in which the Aldridges deposited the money raised through the sale of the alternative CDs.

46. The Aldridges paid Casmay and Thomas approximately $255,000 in undisclosed commissions.

47. The Aldridges used the remains of the proceeds of their offering of the Century Financial CDs in ways that were contrary to what was represented to the investors.

48. Gari and Tracey Aldridge used investors' money for their personal expenses.

49. The Aldridges used investors' money to buy themselves cars, jewelry, expensive dinners, and to pay their own mortgages.

8

50. Gari Aldridge also used investor money to pay for his hair transplant. He used a Century Financial credit card to pay for this expense. Tracey Aldridge later signed a check out of the proceed of the Century Financial CD offering to pay Gari's credit card bill.

51. Gari Aldridge used approximately $510,000 of investors' money for his personal expenses. Tracey Aldridge executed Century Financial checks to pay for these expenses out of the proceeds of the Century Financial alternative CD offering.

52. Tracey Aldridge used approximately $198,000 of investors' money for his personal expenses. He executed Century Financial checks to pay for these expenses out of the proceeds of the Century Financial alternative CD offering.

53. In addition to using investor money to pay for their personal expenses, the Aldridges used approximately $59,000 of new investors' money to pay prior investors their promised distributions. These were the only payments of purported returns made by Century Financial and the Aldridges to investors. In or about the last quarter of 2004, Century Financial and the Aldridges stopped making these interest payments to investors.

54. The Aldridges used the remaining investor proceeds to attempt to operate a high-risk mortgage business by pooling investors' funds to make subprime mortgage loans.

55. The Aldridges used approximately $1.02 million of the investors' money to pay for their personal expenses, to pay earlier investors with new investor money, and to pay undisclosed commissions to Casmay and Thomas. The Aldridges lost the rest of the investors' funds attempting to operate their undisclosed high-risk subprime mortgage business.

56. As a result, investors in the Century Financial alternative CDs lost almost all of their purportedly guaranteed returns and FDIC insured investment.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act of 1933
### [15 U.S.C. § 77q(a)(1)]
### [Against all Defendants]

57. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

58. By their conduct, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial, in the offer or sale of securities issued by Century Financial, by the use of any means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly, have employed devices, schemes or artifices to defraud.

59. Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial knew, or were reckless in not knowing, the facts and circumstances described in this Complaint.

60. By reason of the foregoing, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933
[15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]
[Against all Defendants]

61. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

62. By their conduct, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial, in the offer or sale of securities issued by Century Financial, by the use of any means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or have engaged in transactions, practices, or courses of business which have been or are operating as a fraud or deceit upon purchasers of securities issued by Century Financial.

63. By reason of the foregoing, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

### Violations of Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]
[Against all Defendants]

64. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

65. By their conduct, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial, in connection with the purchase or sale of securities by Century Financial, by the use of any means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit upon any person.

66. Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial knew, or were reckless in not knowing, the facts and circumstances described in this Complaint.

67. By reason of the foregoing, Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## COUNT IV

### Violations of Section 15(a)(1) of the Exchange Act
### [15 U.S.C. § 78o(a)(1)]
### [Against Defendant Casmay]

68. Paragraphs 1 through 56 are realleged and incorporated by reference herein.

69. At the times alleged in this Complaint, Casmay was in the business of effecting transactions in securities for the accounts of others, for which he received transaction based compensation in the form of undisclosed commissions.

70. Casmay made use of the mails and the means and instrumentalities of interstate commerce to effect transactions in and to induce or attempt to induce the purchase of securities.

71. At all times alleged in this Complaint, Casmay was not registered with the Commission as a broker-dealer, as required by Section 15(b) of the Exchange Act [15 U.S.C. §78o(b)].

72. By reason of the forgoing, Casmay violated Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff, the United States Securities and Exchange Commission, respectfully requests that this Court:

A. Find that Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial committed the violations alleged in this Complaint;

B. Enter orders of permanent injunction in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining: (1) Gari Aldridge, Tracey Aldridge, and Century Financial, their agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. §77(q)(a)] and Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder; and (2) James Casmay, his agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section

13

17(a) of the Securities Act [15 U.S.C. §77(q)(a)] and Sections 10(b) and 15(a)(1) of the Exchange Act [15 U.S.C. §78j(b) and o(a)(1)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder;

    C.    Order Gari Aldridge, Tracey Aldridge, James Casmay, and Century Financial to disgorge all ill-gotten gains received by them as a result of the wrongful conduct set forth in this Complaint, including prejudgment interest;

    D.    Order Gari Aldridge, Tracey Aldridge, and James Casmay to pay an appropriate civil penalty for the wrongful conduct set forth in this Complaint, pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§78u(d)(3) and 78u-1]; and

    E.    Grant such additional relief as this Court deems appropriate.

Respectfully submitted,

Jeffrey Levine-IL 6229701
James G. Lundy-IL 6231095
Securities & Exchange Commission
175 W. Jackson, Suite 900
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

October 18, 2006